IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SUSAN MAE POLK, ) No. C 08-1483 MMC (PR)
      Plaintiff, )
    v. ) **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS CAVIN, CHERTKOW, AND RUPF; DIRECTIONS TO CLERK**
JAMES CAVIN, et al., )
      Defendants. ) **(Docket No. 113)**
_____ )

    On March 17, 2008, plaintiff, a California prisoner then incarcerated at the Central California Women's Facility in Chowchilla, California ("CCWF"), and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983.[1] Thereafter, by order filed April 30, 2009, the Court found the allegations in plaintiff's Third Amended Complaint ("TAC"), when liberally construed, stated claims for: (1) excessive force, as against Contra Costa County Sheriff's Deputy James Cavin ("Deputy Cavin"), and (2) supervisorial liability, as against Contra Costa County Deputy Lt. Matt Chertkow ("Lt.Chertkow") and Sheriff

---

[1] Plaintiff currently is incarcerated at the California Institution for Women ("CIW").

Warren Rupf ("Sheriff Rupf").[2] On March 18, 2010, the Court dismissed plaintiff's claims and entered judgment for defendants. On August 17, 2011, the Ninth Circuit issued an opinion reversing this Court's dismissal of plaintiff's claims and remanding for further proceedings. On September 23, 2011, the Court reopened the case.

Now before the Court is defendants' motion for summary judgment, filed December 22, 2011. On April 5, 2013, plaintiff filed her opposition to the motion[3], and, on April 22, 2013, defendants filed their reply.[4]

## FACTUAL BACKGROUND

In her TAC, plaintiff describes the events underlying her claims as follows:

On August 29, 2003, while plaintiff was on her way to court to submit a "Faretta motion"[5] in criminal proceedings then pending against her, Deputy Cavin asked plaintiff if she was going to represent herself and told her she "better not" talk in court. (TAC at 12: ¶ 6 - 13: ¶ 7.) When, prior to presenting her motion, plaintiff was conferring through a plexi-glass window with two representatives from the Public Defender's office, Deputy Cavin interrupted, shouting "I told you not to talk in court," and then hit plaintiff twice on her left shoulder and chest. (TAC at 15: ¶¶ 12-13.) Lt. Chertkow was watching through the plexi-glass but did nothing to intervene. (TAC at 15: ¶ 16.) Deputy Cavin then removed plaintiff

---

[2] By the same order, the Court also found the TAC stated a claim against CCWF prison officials Deborah Patrick, Sergeant Roberts, and Sergeant Gibson for denial of access to the courts. Thereafter, by order filed May 23, 2012, said defendants were dismissed from the action without prejudice.

[3] Plaintiff's application to file an opposition in excess of the Court's 25-page limit (Dkt. No. 262) is hereby GRANTED.

[4] Additionally, each side has filed objections to portions of the summary judgment materials submitted on behalf of the other. To the extent the Court has relied on evidence to which either party objects, such evidence has been found admissible and the objection is hereby OVERRULED. To the extent plaintiff also takes issue with defendants' filing in the public record copies of inmate grievances she submitted while in the custody of Contra Costa County, which grievances are attached as Exhibits A and B to the Declaration of Austin Weaver filed in support of defendants' motion for summary judgment (see Dkt. No. 268), the Clerk will be directed to file those documents under seal as set forth below.

[5] A defendant in a criminal case is entitled, upon a sufficient showing, to waive his/her right to counsel and to represent himself/herself. See Faretta v. California, 422 U.S. 806, 836 (1975).

1 from the courtroom into the holding area and hit plaintiff on her elbow with a "blackjack,"
2 causing her to collapse on the floor in excruciating pain. (TAC at 16: ¶¶ 18-20.) Plaintiff
3 cried out to a female deputy that her elbow was broken. (TAC at 16: ¶ 21.) Before plaintiff
4 was taken to the hospital, Lt. Chertkow was extremely hostile toward her, refused to allow her
5 to file a complaint against Deputy Cavin, and threatened to charge her with battery against a
6 police officer. (TAC at 18: ¶ 31.) Later that afternoon, plaintiff was taken to a local hospital
7 where an X-ray confirmed her elbow was broken. (TAC at 18: ¶¶ 32-33.)

8        Plaintiff describes Deputy Cavin as "a notoriously aggressive and unscrupulous
9 officer." (TAC at 30: ¶ 5.) She states that "[o]fficers who have a history of aggression, like
10 James Cavin, are assigned to guard inmates, who are less likely to complain or whose
11 complaints may be discounted" (TAC at 30: ¶ 3) and that Deputy Cavin "kept reappearing in
12 all of the courtrooms to which [plaintiff] was assigned during the years [she] was detained in
13 Contra Costa [County]" (TAC at 30: ¶ 5).

14        On March 17, 2008, plaintiff filed her original complaint in the instant action. On
15 January 9, 2009, she filed her TAC, in which she alleges her constitutional rights were
16 violated by Deputy Cavin's use of excessive force against her, Lt. Chertkow's failure to
17 properly train Deputy Cavin and respond to his use of force, and Sheriff Rupf's
18 implementation of a policy of placing "the most aggressive and violent officers in charge of
19 the most vulnerable" inmates. (TAC at 30-31: ¶ 5, 31: ¶ 9, 32: ¶ 34.)

20        Defendants' version of the events in and around the courtroom differs from that
21 asserted by plaintiff, in that they assert Deputy Cavin used reasonable force; in support
22 thereof, they submit declarations stating the following:

23        On August 29, 2003, plaintiff was scheduled to appear in a courtroom where Deputy
24 Cavin was working as a courtroom deputy. (Decl. of J. Cavin Supp. M. Summ. J. ("Cavin
25 Decl.") ¶ 5.) Plaintiff was in the courtroom and refused to speak softly with her deputy
26 public defender while the court was hearing another case. (Id.) Plaintiff did not lower her
27 voice even after Deputy Cavin asked her more than once to do so. (Id.) Plaintiff's voice
28 made it difficult for the court reporter to hear the case in session. (Id.) Because plaintiff

3

1 would not lower her voice, Deputy Cavin had to remove her from the courtroom. (Id.) While
2 he was holding open the door that leads to the sally ports, plaintiff lunged at him, striking him
3 in the chest with her right shoulder and knocking him back and into the door. (Id.) In order to
4 control her movements, Deputy Cavin had to put plaintiff in a "rear wrist lock." (Id.)
5 Plaintiff continued to struggle and struck Deputy Cavin's hand several times as he attempted
6 to use his key in the electronic lock of the sally port door. (Id.) Once in the sally port,
7 plaintiff continued to struggle. (Id.) Two deputies from the Transportation Unit responded
8 and took custody of plaintiff from Deputy Cavin. (Id.) Deputy Cavin did not hit Polk at any
9 time or with any object. (Id. ¶ 6.) It is against policy to carry a baton in the detention facility,
10 and he did not have one at the time of the incident. (Id.)

11     Lt. Chertkow was not present at the time plaintiff alleges Deputy Cavin broke her
12 elbow on August 29, 2003, and, consequently, he had no opportunity to intervene, even if it
13 had been appropriate. (Decl. of M. Chertkow Supp. M. Summ. J. ("Chertkow Decl.") ¶ 7.)
14 Lt. Chertkow never witnessed Deputy Cavin hit or be aggressive with plaintiff at any time.
15 (Id.) Lt. Chertkow supervised Deputy Cavin in Court Security for approximately one and
16 one-half to two years. (Chertkow Decl. ¶ 6.) None of the deputies he supervised has been
17 "overly aggressive or unscrupulous." (Id.)

18     Sheriff Rupf never met or had personal contact with plaintiff at any time. (Decl. of W.
19 Rupf Supp. M. Summ. J. ("Rupf Decl.") ¶ 9.) He was not involved in and did not observe the
20 alleged incident with Deputy Cavin. (Id.) He never had any information that Deputy Cavin,
21 or any other officer, was "notoriously aggressive and unscrupulous." (Id. ¶ 8.)

22     Although on a few occasions following the August 29, 2003 incident, plaintiff may
23 have appeared in a courtroom where Deputy Cavin was working, Deputy Cavin and his
24 supervisors made an effort to avoid his having to come into contact with her, as she became
25 angry and disruptive in the courtroom whenever she saw him, and his supervisors agreed that
26 he would not work as a bailiff in a courtroom where she was scheduled to appear. (Cavin
27 Decl. ¶ 7.) When plaintiff's criminal case was eventually assigned to a specific courtroom for
28 trial, Deputy Cavin was assigned to a courtroom on a different floor. (Id.)

4

# DISCUSSION

I. Exhaustion of Administrative Remedies

At the outset, the Court addresses defendants' argument that defendants are entitled to judgment on the ground that plaintiff failed to exhaust her administrative remedies.

A. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although previously within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). The PLRA exhaustion requirement requires "proper exhaustion" of all available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Moreover, those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (citation omitted). Even where the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion is a prerequisite to all inmate lawsuits pertaining to prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010).

Nonexhaustion under § 1997e(a) is an affirmative defense, and is properly brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).[6] In deciding a motion to dismiss for

---

[6] Defendants originally raised the instant non-exhaustion defense in their Motion to Dismiss, filed July 16, 2009. (Dkt. No. 25.) The Court declined to address the defense at that time as it had found the action subject to dismissal on alternative grounds. As noted above, the Ninth Circuit later reversed and remanded for further proceedings, after which defendants re-asserted their non-exhaustion defense in the instant motion for summary

5

1 failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the
2 pleadings and decide disputed issues of fact. Id. at 1119-20. If the court concludes that the
3 prisoner has not exhausted the jail's or prison's administrative process, the proper remedy is
4 dismissal without prejudice. Id.

  B.  County Jail Procedures

  In support of their motion, defendants have submitted a declaration by Lieutenant Eric Christensen ("Lt. Christensen"), who has been employed in the Contra Costa County Sheriff's Office ("CCCSO") for seventeen yeas and has worked in a number of its divisions, including the Custody Services Bureau, where he currently is responsible for the administrative operations of all detention facilities. (Decl. E. Christensen Supp. Defs.' Mot. Dismiss ("Christensen Decl.") ¶ 2.) As explained by Lt. Christensen, the Contra Costa County detention facilities, at the time the alleged constitutional violations took place, i.e., in 2003, provided their inmates with procedures for filing administrative grievances about the conditions of their confinement or any other aspect of their treatment while in custody, which procedures were set forth in the "Inmates Grievances" section of the "Detention Division Policies and Procedures Manual." (Christensen Decl. ¶¶ 2-3 & Ex. A.) The procedures in effect at the time provided that inmates could submit, to a deputy or facility staff member, either an "informal" verbal grievance or a "formal" written grievance on an inmate request form. (Id. ¶ 11 & Ex. A.) The procedures further required a staff member to provide a written response within 48 hours. (Id. ¶ 12 & Ex. A.) If the inmate was unsatisfied with the response, any appeal of the response had to be made in writing within five calendar days. (Id. ¶ 12 & Ex. A.) The response was to be appealed to the Facility Commander, and thereafter to the Detention Division Commander, the Custody Services Bureau Commander, and, ultimately, to the Sheriff. (Id.) Plaintiff has submitted no evidence to the contrary.

  In sum, the evidence is undisputed that at the time plaintiff was in the custody of

---

judgment. Accordingly, the Court finds defendants have properly raised non-exhaustion as a defense and, consequently, considers said defense herein.

1 Contra Costa County, the discrete steps in the chain of command were: Level 1 (Informal or
2 Formal Grievance to a deputy or staff member), Level 2 (Appeal to the Facility Commander),
3 Level 3 (Appeal to the Detention Division Commander), Level 4 (Appeal to the Custody
4 Services Bureau Commander), and, lastly, Level 5 (Appeal to the Sheriff) (id.); additionally,
5 the evidence is undisputed that the above-referenced Manual required inmates to proceed up
6 the chain of command through each of said five discrete levels to completely and properly
7 exhaust his or her administrative remedies (id. ¶¶ 4, 13).

8 Further, according to Lt. Christensen and undisputed by plaintiff, all inmate grievances
9 are stored in an inmate's booking file (id. ¶ 14), all inmates are shown a video and given an
10 orientation describing the policies and procedures for filing administrative grievances each
11 time they are booked into custody at any Contra Costa County detention facility (id. at ¶ 5),
12 and the sections of the Manual explaining these procedures are posted in all housing units
13 (id.).

### C. Plaintiff's Grievances

15 Defendants have offered evidence that a search of plaintiff's booking file shows no
16 record of a properly submitted grievance regarding the incident giving rise to the instant case
17 having been submitted to all levels of review before the filing of the instant action. (See
18 Christensen Decl. ¶ 14.) Plaintiff's booking file does show she filed a "Request" referencing
19 the incident; specifically, on August 31, 2003, plaintiff filed an "Inmate Request for
20 Information" form. (Id. Ex. E.) Although the form had check-boxes allowing inmates to
21 identify the form as a "Grievance" or "Appeal," plaintiff checked neither of those boxes;
22 instead, she checked the box identifying the form as a "Request" (id.), and, in the body of the
23 form, wrote the following:

> I am requesting that you provide me with the name of the deputy who hit me with a metal truncheon on 8/29/03 at approximately 9:00 a.m. He hit me in the anteroom of the court for Judge Cram. I was told Sgt. Chertkow was investigating this complaint. He would not take my statement however, and would not give me any information. I am also requesting copies of photos taken by Sgt. Chertkow.

27 (Id.)

28 On September 5, 2013, Lt. Chertkow, who, at that time, held the rank of Sergeant,

7

responded to the request. (Christensen Decl. ¶ 14 & Ex. F.) The response stated the following:

> You are listed as a suspect in a battery on a peace officer regarding the incident you are referring to in your request. Sheriff's Office policy is to not give copies of reports to persons who are listed as suspects unless ordered to do so by subpoena. The pictures you have requested are part of the report.
>
> We have received no statement from anyone including an independent witness at the scene that you were hit with a "metal truncheon." If you desire to make a formal complaint about this incident please do so in writing.

(Id.)

According to Lt. Christensen, plaintiff never filed a "formal complaint" as instructed by Lt. Chertkow (Christensen Decl. ¶ 14); nor did plaintiff appeal Lt. Chertkow's September 5, 2003 response (id.). Consequently, even if plaintiff's August 31, 2003 "Inmate Request for Information" could be construed as a grievance, such grievance would not satisfy the exhaustion requirement, because plaintiff did not appeal Lt. Chertkow's response to the higher available levels of administrative review, as the PLRA requires.

In her opposition, plaintiff contends she "filed not one, but two complaints, and did so within the first forty-eight hours after Cavin broke [her] elbow." (Opp. at 40.) In that regard, she first argues that the Inmate Request for Information, discussed above, was a grievance. Plaintiff states she "did not mean to indicate that [she] was not making a complaint by not checking 'grievance' or 'appeal.'" (Pl. Decl. Supp. Opp. Mot. Summ. J. ("Pl. Decl.") at 14.) As discussed above, however, the request, even if construed as a grievance, did not satisfy the exhaustion requirement.

Plaintiff next asserts that she filed a second grievance in the form of a six-page declaration, dated August 30, 2003, and submitted to "Judge Coleman," with a copy to the Sheriff's Department. (Opp. at 40; Pl. Decl. at 12 & Ex. I.) In her opposition, plaintiff claims "a deputy informed [her] she could make a complaint that way." (Opp. at 40.) Plaintiff, however, submits no declaration stating such comment was made, nor is there any other evidence to such effect. Even assuming a deputy made such a comment, and even assuming plaintiff could reasonably rely on it despite the posted procedures and the video

8

informing inmates that grievances were required to be submitted to a deputy or facility staff, there is no showing that plaintiff appealed any response to such "grievance" to the higher levels of administrative review that were available to her.

Lastly, and in the alternative, plaintiff argues she was prevented from filing a grievance due to Lt. Chertkow's "implicit threats." (Opp. at 41.) The first such "implicit threat," plaintiff asserts, occurred "several hours" after the incident with Deputy Cavin, when "Chertkow appeared with a photographer from the public defender." (Pl. Decl. at 11.) According to plaintiff, she told Lt. Chertkow she "wanted to make a statement and to file a complaint." (Id.) According to plaintiff, "Chertkow said he had witnesses, he wasn't taking any statements from [plaintiff], and if [plaintiff] didn't shut up, he'd charge [her] with battering Cavin." (Id. at 11-12.)

Plaintiff identifies the second "implicit threat" as Lt. Chertkow's letter of September 5, 2003, quoted above, wherein Lt. Chertkow responded in writing to plaintiff's Inmate Request for Information form. (Pl. Decl. at 14.) Specifically, plaintiff states "Chertkow's threat in response on the same day I filed my declaration with Judge Coleman, 9-5-03, i.e. to charge me with battery, was intimidating." (Pl. Decl. at 14 & Ex. K.)[7]

While the Ninth Circuit has not addressed the question of whether a threat of retaliation may render administrative remedies effectively unavailable, see Sapp, 623 F.3d at 823, where other circuits have so held, those courts have further held that any such threat must be "sufficiently serious" and must objectively rise to the level "that would deter a reasonable inmate of ordinary firmness and fortitude" from pursuing the grievance process. See Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 684-85 (7th Cir. 2006).

Here, the remarks plaintiff states were made by Lt. Chertkow on August 29, 2003, the

---

[7] Elsewhere in her opposition, however, plaintiff states said declaration was filed with Judge Coleman "within forty-eight hours" of the August 29, 2003 incident. (Opp. at 40.) The actual date of any such filing cannot be ascertained from the record presented, as plaintiff has not provided an endorsed copy from the Superior Court where the document purportedly was filed.

9

1 first purported threat, were clearly directed to plaintiff's behavior at that moment; they
2 included no reference to the grievance process, nor would a reasonable inmate have
3 understood them as an effort to deter her from filing a grievance.[8]  Moreover, as discussed
4 above, plaintiff contends she filed two grievances within forty-eight hours of the subject
5 incident.

6      Lt. Chertkow's September 5, 2003 letter, the second purported threat, did no more than
7 inform plaintiff she was the subject of a battery investigation, which information was
8 conveyed to explain why the information she had requested on her August 31, 2003 "Inmate
9 Request for Information" form, i.e., photographs and the results or reports of a Sheriff's
10 Office investigation, could not be provided.  Such recitation of Sheriff's Office policy cannot
11 be said to constitute a "sufficiently serious" threat, see Turner, 541 F.3d at 1085, and, indeed,
12 the response specifically advised plaintiff she could pursue a formal complaint.  (Christensen
13 Decl. ¶ 14 & Ex. F.)  In particular, plaintiff was advised: "If you desire to make a formal
14 complaint about this incident please do so in writing."  (Id. Ex. F.)

15      In sum, the undisputed evidence demonstrates plaintiff did not properly exhaust her
16 available administrative remedies, and she has not established grounds for excusing the
17 PLRA's requirement that she do so.

18      Accordingly, defendants are entitled to dismissal based on plaintiff's failure to exhaust.

19 II.    Motion for Summary Judgment

20      Defendants further argue, in the alternative, they are entitled to judgment on the ground
21 that plaintiff's action is barred by the statute of limitations.[9]

---

[8] In his declaration, Lt. Chertkow states he took photographs of plaintiff's injuries but "did not want to talk to her without first talking to her attorney," a deputy public defender, and that he offered plaintiff his business card, which she refused to take.  (Chertkow Decl. ¶ 9.)  Polk submits no declaration or other evidence to the contrary.

[9] The Ninth Circuit decision reversing the Court's dismissal on statute of limitations grounds does not preclude defendants from raising the statute of limitations by the instant motion, as the decision was based on the Ninth Circuit's finding that the allegations in the complaint were sufficient to withstand a motion to dismiss.  (See Dkt. No. 83); see also Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir. 1993) ("California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or

A. <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>id.</u>

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. <u>Id.</u> The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>See</u> <u>id.</u> at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. <u>See</u> <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. <u>See</u> <u>T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, provided it is

---

trial stage of litigation.")

based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not based purely on information and belief but rather on personal knowledge).[10]

B. Analysis

As noted, defendants argue plaintiff's claims against them are time-barred because the complaint was not filed in compliance with the applicable statute of limitations.

Section 1983 contains no statute of limitations. See Elliott v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994). Federal courts apply the state's personal injury statute of limitations, subject to any state tolling provisions that are not inconsistent with federal law. Wallace v. Kato, 549 U.S. 384, 387 (2007); Azer v. Connell, 306 F.3d 930, 935-36 (9th Cir. 2002). As of January 1, 2003, the California statute of limitations for personal injury actions is two years. Cal. Code Civ. Proc. § 335.1; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004). A federal court, however, must also give effect to a state's tolling provisions. See Hardin v. Straub, 490 U.S. 536, 543-44 (1989). In California, incarceration of the plaintiff is a disability that tolls the running of the statutory period for a maximum of two years. See Cal. Civ. Proc. Code § 352.1. When the prisoner is released, the statute of limitations starts to run, and tolling will not be reinstated by subsequent incarceration. See Boag v. Chief of Police, 669 F.2d 587, 588 (9th Cir. 1982) (disability of imprisonment ceases upon release on parole); Williams v. Coughlan, 244 F.2d 6, 8 (9th Cir. 1957) (statute of limitations not tolled after termination of confinement).

Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action. See TwoRivers v. Lewis, 174 F.3d 987, 991-92

---

[10] Plaintiff's TAC is verified; in addition, plaintiff has submitted a sworn declaration with her opposition.

1 (9th Cir. 1999); Elliott, 25 F.3d at 802.  Here, the injury that forms the basis of the instant
2 action is Deputy Cavin's alleged use of excessive force against plaintiff.  Because plaintiff
3 knew of such injury on the date it occurred, August 29, 2003, said date is the date on which
4 her claim accrued.  Consequently, had plaintiff remained continuously incarcerated for at
5 least two years thereafter, plaintiff, under California law, would have had at most four years
6 from the date on which her claim accrued in which to commence her action against
7 defendants, i.e., two years under California Code of Civil Procedure § 335.1 and an
8 additional two years under § 352.1.  Plaintiff thus would have been required to file her
9 original complaint in the instant action no later than August 29, 2007.  See Sain v. City of
10 Bend, 309 F.3d 1134 at 1136-37 (9th Cir. 2002) (holding federal action containing federal
11 cause of action commences when complaint filed).  Plaintiff, however, did not file her
12 complaint until March 17, 2008.

13 Moreover, plaintiff remained in continuous custody in Contra Costa County detention
14 facilities only a little over a year, from August 27, 2003 until September 15, 2004, at which
15 time she was released on bail.  (Christensen Decl. ¶ 8 & Ex. B.)  Because she was released
16 from custody on bail, the tolling of the limitations period ended and the two-year limitations
17 period began to run on September 15, 2004.  Although plaintiff was re-arrested and returned
18 to custody on April 19, 2005, (id.), any such subsequent reincarceration, as noted, did not
19 cause the limitations period to be tolled again.  See Boag v. Chief of Police, 669 F.2d at 588.
20 Consequently, plaintiff had to file her § 1983 action within two years of September 15, 2004,
21 i.e., by September 15, 2006.  As noted, she did not do so, and, indeed, did not file the instant
22 action until March 17, 2008, more than four years after the events giving rise to her claim
23 occurred and the causes of action accrued.

24 In opposition, plaintiff contends her lawsuit is not "limited to [her] injured arm."  (Opp.
25 at 33.)  She asserts that she also has "set forth a classic First Amendment claim for
26 retaliation."  (Id.)  Specifically she asserts that: (1) Deputy Cavin retaliated against her for
27 attempting to file a "Faretta" motion; (2) Lt. Chertkow threatened to charge her with
28 battering Deputy Cavin after she "complain[ed] that Cavin was interfering with [her] right to

13

1 self representation"; and (3) Sheriff Rupf "made an implicit threat to charge [her] with
2 battering Deputy Cavin and/or damage [her] defense . . . as a result of [her] making a
3 complaint." (Id. at 33-35.) Plaintiff, however, has not pleaded a retaliation claim in her
4 complaint, nor did the Court, in its order of service, find such a claim had been pleaded.
5 Moreover, even assuming plaintiff had a cognizable retaliation claim, the alleged acts of
6 retaliation all occurred at the time of or within a few days after the August 29, 2003 incident
7 with Deputy Cavin, and thus would be barred by the statute limitations.

8     Plaintiff next argues, in the alternative, that she is entitled to equitable estoppel. (Opp.
9 at 35.) Equitable estoppel "focuses primarily on the actions taken by the defendant in
10 preventing a plaintiff from filing suit." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th
11 Cir. 2000), overruled on other grounds by Socop-Gonzales v. I.N.S., 272 F.3d 1176, 1196
12 (9th Cir. 2001). To establish equitable estoppel, "the plaintiff must point to some fraudulent
13 concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon
14 which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" Lukovsky v.
15 San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008).

16     Here, plaintiff asserts she could not file her claims because: (1) she was too intimidated
17 to file suit; and (2) she was denied access to legal materials during her incarceration. (Opp.
18 at 36-38.)

19     Specifically, plaintiff argues, she "delayed filing suit because [she] was scared[;] . . .
20 CCCSO officials repeatedly threatened [her] throughout the time [she] was in the custody of
21 the CCCSO and the statute of limitations was expiring." (Opp. at 36.) All of the threats that
22 plaintiff identifies as bearing on said delay, however, she attributes to other correctional
23 officers, and not to any defendant against whom the instant action is brought. (See Pl. Decl.
24 at 24-30; Opp. at 35-37.) Plaintiff claims, for example, that "[Deputy] Linkenhoker
25 implicitly threatened [plaintiff's] son" (Opp. at 36), and that Deputy Linkenhoker and Deputy
26 Lynch threatened plaintiff by attributing anti-semitic remarks to her. (Pl. Decl. at 24-25).
27 Additionally, plaintiff states that when she returned to jail in April 2005, Deputy
28 Linkenhoker, "while patting [plaintiff] down, [] remarked; 'How's that arm? ... How's your

14

son doing? ... Staying out of trouble?'" (Pl. Decl. at 28 (ellipses in original).) Plaintiff states she "took it as a threat to harm [plaintiff] and/or [plaintiff's] son if [plaintiff] tried to represent [herself] again." (Id.) Even assuming such questions could be construed as threats, they do not excuse plaintiff's delay in filing the instant action because, as noted, equitable estoppel "focuses primarily on the actions taken by the *defendant* in preventing a plaintiff from filing suit." Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002) (internal quotation and citation omitted) (emphasis in original).

Although as discussed above, plaintiff has identified two "implied threats," purportedly made by defendant Chertkow, which, she asserts, prevented her from filing a grievance, it is unclear whether plaintiff is also asserting the same two "threats" prevented her from filing the instant action. In any event, as discussed above, any such argument fails, as neither the remarks nor the letter rise to the level of a cognizable threat. Further, as noted, plaintiff was not hesitant to make complaints regarding the August 29, 2003 incident, and, by plaintiff's own admission, "[she] continued to complain about [Deputy Cavin's] behavior" (TAC at 31: ¶ 5); indeed, as late as November 2006, in a lengthy complaint to Lt. Bani Kollo of the Contra Costa County Sheriff's Office, plaintiff again complained that "[her] arm was broken by a deputy." (Decl. B. Kollo Supp. Defs.' Mot. Summ. J. ("Kollo Decl.") Ex. A at 4.)[11] Additionally, in August 2005, plaintiff filed a pro se "Pitchess motion" in state court[12] (TAC at 31: ¶ 6) in an effort to obtain the "personnel records" of defendants Deputy Cavin and Lt. Chertkow, among others, and specifically seeking information regarding the "attack" alleged

---

[11] Lt. Kollo states he has been employed with the Contra Costa County Sheriff's Office for approximately 20 years and was assigned as Commander to the West County Detention Facility in 2006 and 2007, when plaintiff was incarcerated there. (Kollo Decl. ¶¶ 2-3.) He states he "dealt with [plaintiff] on more grievances and requests for information than any other inmate in the history of [his] career." (Id. ¶ 3.)

[12] By a "Pitchess motion," a criminal defendant may compel disclosure of information contained in an arresting officer's personnel file, when relevant to the defendant's defense against a criminal charge. See People v. Mooc, 26 Cal. 4th 1216, 1219-20 (2001), as modified (Jan. 29, 2002); Pitchess v. Superior Court, 11 Cal. 3d 531 (1974), superseded by statute, Cal. Evid. Code §§ 1043-1045.

here (Defs.' Req. for Jud. Notice Supp. Mot. Summ. J. ("Def. RJN") Exs. B, C).[13]

Lastly, even assuming, arguendo, defendants' conduct in some manner prevented plaintiff from filing her complaint while she was in defendants' custody between August 29, 2003 (the date on which she alleges she was assaulted) and September 15, 2004 (the date on which she was released on bail), plaintiff was released and remained out of custody thereafter for close to seven months, i.e., until April 10, 2005, and she has made no allegation, let alone presented any evidence suggesting that, during such period, there was any conduct on the part of any defendant that would have prevented her from filing her lawsuit.[14]

Plaintiff's argument that she was unable to file suit because she was denied legal materials fails for similar reasons. The undisputed facts show that plaintiff pursued a number of grievances and legal complaints during the limitations period, and did so without counsel. In addition to the complaints and grievances already described, plaintiff filed: (1) a small claims action against a San Ramon towing company in 2004 (Def. RJN Ex. A); (2) a civil action against her brother-in-law and another individual in 2005 (TAC at 14: ¶ 9); and (3) a civil rights action challenging a Sheriff's Office policy in 2006 (TAC at 25: ¶ 34). Equally important, plaintiff has made no allegation or presented any evidence showing she was prevented from obtaining whatever legal materials she asserts she needed to file the instant action during the time she was out of custody on bail.

In sum, plaintiff cannot rely on a retaliation claim or equitable estoppel to avoid the statute of limitations.

Accordingly, defendants are entitled to summary judgment on the ground that the action

---

[13] No objections thereto having been filed, and good cause appearing, the parties' respective requests for judicial notice are hereby GRANTED. (See Doc. Nos. 114 and 273.)

[14] Because the Court has found the limitations period expired on September 15, 2006, any alleged conduct on the part of prison officials at CCWF following plaintiff's transfer to such facility in February 2007 (TAC at 38-42) could not have prevented plaintiff from filing a timely action.

16

is time-barred.[15]

**CONCLUSION**

For the foregoing reasons:

1. Defendants Deputy James Cavin, Deputy Lt. Matt Chertkow and Sheriff Warren Rupf's motion for summary judgment is hereby GRANTED, on the ground that plaintiff's claims are barred by the applicable statute of limitations.

2. Alternatively, if the action is not time-barred, the action is hereby DISMISSED without prejudice, for failure to exhaust administrative remedies.

3. Because Exhibits A and B to the Declaration of Austin Weaver have been scanned on the Court's electronic database as part of said declaration, the Clerk is hereby DIRECTED to remove the entire scanned declaration, together with Exhibits A and B thereto (Dkt. No. 268), to file a hard-copy of Exhibits A and B under seal, and to re-scan the declaration without the exhibits.

4. The other defendants to the action having been dismissed by prior order, the Clerk is further DIRECTED to terminate any pending motions, enter judgment in favor of all defendants, and close the file.

IT IS SO ORDERED.

DATED: July 22, 2013

MAXINE M. CHESNEY
United States District Judge

---

[15] Because the Court finds plaintiff's action fails, both on exhaustion and statute of limitations grounds, it does not reach herein defendants' alternative arguments that (1) defendants are not liable on the merits of plaintiff's excessive force claim, and (2) defendants are entitled to qualified immunity.